UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ARLENE SIMMONS,

                Plaintiff,

v.

THE CITY OF NEW YORK and NEW YORK CITY FIRE DEPARTMENT,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COMPLAINT AND JURY DEMAND**

20-CV-3284 (MKV)

Plaintiff, by her attorneys, The Kurland Group, having offices at 85 Broad St., 28th Floor, New York, NY 10004, complaining of the Defendants, alleges as follows:

## NATURE OF ACTION

1.      Plaintiff Arlene Simmons ("Plaintiff" or "Ms. Simmons") brings this action against Defendants City of New York (the "City") and New York City Fire Department ("FDNY" or the "Department") (collectively, "Defendants") to secure injunctive and monetary relief from Defendants' tortious and discriminatory conduct Plaintiff suffered throughout her employment with Defendants.

2.      Plaintiff alleges that Defendants have subjected her to a hostile work environment and retaliation because of Plaintiff's age and sex, in violation of New York City Administrative Code and Charter, §§ 8-101, *et seq.* ("New York City Human Rights Law").

## ADMINISTRATIVE PREREQUISITES

3.      On September 27, 2018, Plaintiff filed a Charge of Discrimination (Charge No. 520-2019-00143) against Defendants with the Equal Employment Opportunity Commission ("EEOC").

4.      On October 21, 2019, Plaintiff received a Notice of Right to Sue from the

1

EEOC.  *See* **Exhibit A**.

5. On December 16, 2019, Plaintiff initiated this action by filing a Summons with Notice in New York State Supreme Court, New York County, which she served on Defendants on April 8, 2020.

6. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

7. Defendants removed this action to federal court on April 27, 2020 based on federal question jurisdiction, pursuant to 28 U.S.C. § 1441(c)(1)(A).[1]

8. Venue is proper in New York County, as the causes of action arose in New York County.

9. The amount of damages sought in this action exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## JURY DEMAND

10. Plaintiff demands a trial by jury in this action on each and every one of her claims.

## PARTIES

11. **PLAINTIFF ARLENE SIMMONS** is a 55-year-old woman who resides at 290 East Main Street, Elmsford, New York 10523.  At all times relevant to the instant action, Ms. Simmons was employed by Defendants and met the definition of "employee" under all applicable statutes.

12. **DEFENDANT CITY OF NEW YORK** is a municipality duly incorporated under the laws of the State of New York and maintains its principal place of business at New York

---

[1] Plaintiff is simultaneously moving to remand this action back to New York State Supreme Court.

City Hall, 260 Broadway, New York, New York 10007.

13.     **DEFENDANT NEW YORK CITY FIRE DEPARTMENT** is an agency of the City that employs the City's firefighters and members of Emergency Medical Services ("EMS"), as well as civilian employees. FDNY maintains its principal place of business at 9 MetroTech Center, Brooklyn, New York 11201.

## STATEMENT OF FACTS

14.     Ms. Simmons is 55-year-old woman who has been employed by the City as a first-responder since August 1993.

15.     Throughout her more than twenty-five (25) years of service, Plaintiff has served the EMS Bureau of the FDNY in a number of capacities including, but not limited to, ten (10) years of service in the Office of Medical Affairs and nearly four (4) years in the Emergency Medical Dispatch Center.

16.     Throughout this time, while still working as a full-time EMT, Plaintiff obtained an Associate of Science (AS) degree in Allied Health Science, cultivated relevant skills in furtherance of her EMT and Paramedic certifications, and completed FDNY trainings in Haztac and rescue training. *See* **Exhibit B**.

17.     Plaintiff's years of knowledge, experience, and training were instrumental in her promotion to the rank of Lieutenant in 2012.

18.     In or around 2016, Plaintiff was assigned to the Office of Recruitment and Retention (the "Recruitment Office"), where the mission is to generate interest among students, community members, and other professionals in joining FDNY, as well as developing and implementing new recruiting initiatives consistent with the recruitment metrics and goals of FDNY. Plaintiff's extensive tenure and long history of leadership as a member of FDNY, in

addition to her diversity of assignments, made her an ideal candidate for this position.

19. Some of the essential job functions of Plaintiff's position in the Recruitment Office included, but were not limited to, serving as a liaison to community schools and organizations for the purpose of FDNY recruitment, serving as a resource coordinator for community events, attending various career day events for the purpose of FDNY recruitment, establishing and maintaining email and phone contact with organizations for the purpose of FDNY recruitment, and meeting with and monitoring subordinates.

20. During Plaintiff's employment in the Office of Recruitment and Retention, she was the only female Lieutenant in the Recruitment Office.

21. In that role, Plaintiff's expectation was that she would receive the necessary departmental support and resources to facilitate the growth of her recruitment initiatives. Such departmental support included staffing support, administrative support, logistical support such as accessing FDNY vehicles to and from recruitment events, and attending Recruitment Office planning and scheduling meetings.

22. This expectation of Plaintiff was based on the fact that all other Recruitment Officers were provided these forms of administrative support from FDNY.

23. However, upon assuming her assignment in the Recruitment Office, Plaintiff experienced a lack of necessary support in comparison to what her Recruitment Office colleagues were provided. Because the Recruitment Office is a metrics-based office where the number of events, recruits generated, and candidates interviewed are the primary indicators of success, Plaintiff's degree of success is dependent upon the level of support given to her and her recruitment efforts.

24. Specifically, in the fall of 2016, Plaintiff began to plan and schedule a number

of recruitment events that required logistical and staff support and made such requests to FDNY. However, her Recruitment Office counterparts repeatedly denied Plaintiff's requests for basic logistical and staff support.

25. By way of example, in the fall of 2016, Plaintiff planned and scheduled a full week of recruitment events and requested an FDNY vehicle for the purpose of attending these events. After her request for a vehicle was denied, she discovered that her Recruitment Office counterparts used the vehicle she requested to attend and staff these recruitment events without her knowledge.

26. Consequently, the other Recruitment Officers received the credit for candidates recruited and interest generated through these events.

27. Soon thereafter, Plaintiff discovered that she was being left out of recruitment meetings, planning events, and e-mail communications about events and recruitment initiatives that thwarted her efforts to effectively perform her job.

28. As a Recruitment Officer, Plaintiff was expected to participate in all Recruitment initiatives, which required more than 37.5 hours per week. However, when Plaintiff requested overtime for her required participation in a recruitment campaign, she was denied such overtime compensation from approximately April 2017 through December 2017.

29. In contrast, upon information and belief all other Recruitment Office Lieutenants – all of whom are male – received overtime compensation during this campaign.

30. Upon information and belief, Defendants paid Plaintiff's male comparators tens of thousands of dollars per person in overtime compensation.

31. Out of economic necessity, Plaintiff was forced to seek overtime opportunities outside of the Recruitment Office.

32. In addition to being wrongfully deprived of overtime pay, Plaintiff was not provided adequate administrative support. Consequently, Plaintiff had no choice but to assume tasks outside her designated job responsibilities in order to complete her primary responsibilities as well as clerical work, while her Recruitment Office colleagues were not required to assume such additional tasks.

33. Plaintiff experienced increasingly isolating behavior from her colleagues within the Recruitment Office and was left out of recruitment events, office-wide events and meetings, and officer-level strategy meetings throughout 2017.

34. By way of example, in June 2017, one of her fellow Recruitment Officers prohibited Plaintiff from attending a recruitment event, stating that FDNY was "only using uniformed officers." This was not only an exclusionary statement, but also demoralizing because Plaintiff is a uniformed officer.

35. As this type of behavior directed at her continued throughout 2017, Plaintiff became concerned with not only her ability to do her job, but also her job security, as she continued to be left out of recruitment events that were planned without her knowledge.

36. In a concerted effort to not be excluded, Plaintiff consistently asked her colleagues and supervisors to schedule meetings with her to discuss her plans for the Recruitment Office and the current state of recruitment initiatives. However, Plaintiff was repeatedly denied these requests as her counterparts were holding meetings and events without her knowledge or participation.

37. In or around December 2017, Plaintiff requested a meeting with the FDNY Assistant Commissioner of the Recruitment Office, Nafeesah Noonan ("Assistant Commissioner Noonan"), to discuss her concerns about her mistreatment and exclusion from Recruitment Office

operations. In turn, Assistant Commissioner Noonan promised Plaintiff that she would be apprised of FDNY's recruitment goals, and Plaintiff reiterated her willingness to help implement and coordinate these recruitment efforts.

38. Around that same time in December 2017, Plaintiff applied for an available position in the FDNY Bureau of Investigations and Trials ("BITs") due to the denials of overtime and staff resources she was experiencing in the Recruitment Office, in addition to her concerns about her mistreatment and exclusion from Recruitment Office operations.

39. In January 2018, Plaintiff again reached out to Assistant Commissioner Noonan to ascertain whether she had been excluded from any necessary recruitment meetings. It was during this meeting that Plaintiff discovered that FDNY had hired a new Director of EMS Recruitment.

40. Plaintiff was not notified that FDNY was even attempting to hire a new Director of EMS Recruitment, let alone that one had been hired.

41. Around this time in January 2018, Plaintiff was selected to interview for the position in BITs; however, Plaintiff decided to withdraw her application for the position in BITs and continued her efforts in the Recruitment Office since she knew and previously worked with the incoming Director of EMS Recruitment, Brandon Mahon ("Mahon").

42. However, Plaintiff received warnings from colleagues to "watch [her] back" around Mahon and Plaintiff was informed that Mahon had previously made derogatory comments about her before being hired for the Director of EMS Recruitment position.

43. In or around February 28, 2018, Mahon commenced his role as Director of EMS Recruitment. Plaintiff attempted to take initiative to work with him and demonstrate her support

for recruitment initiatives by requesting meetings with Mahon and attempting to collaborate with him on FDNY recruitment efforts.

44. Despite Plaintiff's efforts, Mahon not only ignored her emails and requests for meetings, but also openly refused to speak with Plaintiff in the Recruitment Office.

45. Despite her initial hope that the neglect she experienced in the Recruitment Office would end when Mahon assumed his role, the isolation and ostracization only continued to worsen under Mahon's leadership, and it grew more apparent to Plaintiff that this mistreatment was due to her status as an older woman.

46. By way of example, soon after Mahon began his role, he identified that one of the immediate goals of the Recruitment Office was to re-create the FDNY flier featuring younger individuals.

47. The fliers that were used at the time featured Plaintiff, which were then republished to feature a younger woman's picture in place of Plaintiff's image.  *See* **Exhibit C**.

48. In or around March 2018, the Recruitment Office planned a women's history event for FDNY recruits, but Plaintiff was not included on any emails about this event and was excluded from helping plan it.  The only reason Plaintiff even knew the event was coordinated was because she discovered a copy of the event's promotional material.

49. In or around May 2018, Mahon further excluded Plaintiff's participation in events that she planned and staffed for that month.  Mahon also began requesting that Plaintiff perform unnecessary and time-intensive administrative tasks that essentially stripped her of her supervisory duties.  Despite this, Plaintiff performed the requested tasks and continued to seek involvement with the events she planned.

50. Around this time, Plaintiff again sought a new bureau assignment because of

her exclusion from essential communications and sought internal redress for Mahon's conduct.

51. In or around July 2018, Plaintiff, again, applied for a position with BITs, which was substantially similar to the position for which she previously applied in December 2017.

52. As Mahon continued to settle into his role as Director of EMS Recruitment, he expressed a clear preference for younger female members and would interact with the substantially younger women in the office while refusing to acknowledge Plaintiff.

53. Upon information and belief, Mahon had previously given priority in training opportunities to younger employees and his actions as Director of EMS Recruitment continued to exclude older employees in favor of younger employees.

54. In the summer of 2018, Mahon's dismissive attitude towards older employees, such as Plaintiff, began to manifest itself in public comments. For example, Mahon expressed his preference that young employees be showcased on recruitment materials and rejected other employees as "too old" to be featured on recruitment materials.

55. Another example of Mahon's contempt towards Plaintiff occurred on or around August 4, 2018 during a recruiter training session with Mahon and the rest of the Recruitment Office. During individual introductions, Mahon directed Plaintiff to "tell [new members] what kind of training you had if you can remember that far back!"

56. Plaintiff was, at the time and upon information and belief, substantially older than all other members of the Recruitment Office.

57. At this training session, Mahon also made repeated veiled comments about Plaintiff's memory and often accused her of forgetfulness. Plaintiff understood these comments to be based on a stereotypical assumption that older individuals are forgetful.

58. Mahon's comment set the tone for that training session and seemed to empower

others in attendance to openly discuss Plaintiff's age. At one point, an attendee significantly younger than Plaintiff referred to her as "old school."

59. In addition to the offensive nature of these comments made at Plaintiff's expense, they were also made in the presence of her colleagues, subordinates, and recruits, which undermined her position as a Lieutenant.

60. Mahon continued to decrease Plaintiff's assignments, cancel Plaintiff's previously planned events, and exclude her participation in meetings about the events she helped develop, but Plaintiff continued to request meetings with Mahon and other senior Officers. Plaintiff also requested staffing and support for her recruitment initiatives without Mahon's involvement since his conduct only served to thwart her professional development.

61. In July 2018, Plaintiff filed a complaint against Mahon with BITs. Then, soon thereafter, on August 9, 2018, Mahon terminated Plaintiff's assignment with the Recruitment Office. He stated that the basis for her termination was a lack of work product and failure to communicate with Mahon.

62. However, this was a blatant mischaracterization of what actually occurred. The reality is that Mahon refused to work with Plaintiff by disregarding her emails, requests for meetings, and requests for additional work, and denying her participation in event planning and staffing.

63. Nevertheless, Plaintiff still worked to coordinate recruitment events despite Mahon's efforts to exclude her participation at the time of her reassignment.

64. Further, Plaintiff's August 9, 2018 reassignment occurred approximately one (1) week after she initiated a BITs complaint against Mahon asking FDNY to investigate the mistreatment and exclusion she suffered at the hands of Mahon. Plaintiff then supplemented her

BITs complaint on August 14, 2018 following her termination with the Recruitment Office. **Exhibit D**.

65. Then, after Plaintiff filed a Charge of Discrimination with the EEOC on or around September 27, 2018, she was informed that she was not selected to interview for the BITs investigator position, despite the fact that she had been selected to interview for a similar position less than a year prior.

66. Upon information and belief, FDNY's decision to deny Plaintiff's application for the BITs investigator position was in retaliation for her decision to initiate a BITs complaint against Mahon and to file a Charge of Discrimination with the EEOC.

67. As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages, and continues to suffer such injuries, including embarrassment, emotional distress, and mental anguish. Plaintiff has also suffered pecuniary damages including, but not limited to, loss of wages, salaries, benefits, and promotional opportunities. The full extent of these damages is not yet known.

**AS FOR THE FIRST CAUSE OF ACTION
AGAINST DEFENDANTS FOR
VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
DISCRIMINATION**

68. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

69. The acts, practices, and policies of Defendants, as set forth above, constitute discrimination against Plaintiff on the basis of her age and sex, in violation of New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101, *et seq*.

70. Plaintiff is a member of two protected classes, and Defendants' conduct during

Plaintiff's detail with the Recruitment Office and Plaintiff's ultimate termination of duties and reassignment from the Recruitment Office, without justification and in violation of Defendants' own policies, was impermissibly motivated by Plaintiff's age and sex in contravention of New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101, *et seq*. and occurred under circumstances giving rise to an inference of discriminatory intent.

71. As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits, and has suffered and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

## AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW HOSTILE WORK ENVIRONMENT

72. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

73. Defendants' acts and omissions as set forth herein unreasonably altered the conditions of Plaintiff's employment and constitute a hostile work environment in violation of New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101, *et seq*.

74. As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits, and has suffered and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet

known.

### AS FOR THE THIRD CAUSE OF ACTION
### AGAINST DEFENDANTS FOR
### VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
### RETALIATION

75. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

76. Plaintiff exercised her protected right to complain of discrimination by seeking internal redress with FDNY in July 2018 and by filing a Charge of Discrimination with the EEOC on September 27, 2018.

77. In response to this activity, Plaintiff was subjected to adverse employment actions, including changes in the terms and conditions of her employment, alienation from colleagues, and reassignment of her job duties.

78. As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits, and has suffered and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

### DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grants the following relief:

A. Find that Defendants discriminated against Plaintiff in violation of the New York City Human Rights Law;

B. Direct Defendants to take such affirmative action as is necessary to ensure that the effects of their unlawful employment practices are eliminated;

  C. Award Plaintiff all earnings together with all other benefits to which Plaintiff is entitled, including but not limited to wages, salaries, pension, bonuses, and other lost benefits, with pre-judgment interest;

  D. Award Plaintiff compensatory damages due to Defendants' acts that caused Plaintiff pain and suffering*;*

  E. Award interest as allowed by law;

  F. Award Plaintiff reasonable attorneys' fees, expenses, and costs of this proceeding;

  G. Such other and further relief as this Court deems just and proper.

Date: May 18, 2020
   New York, NY

              ~//s//~
              Brian A. Jasinski
              THE KURLAND GROUP
              *Attorneys for Plaintiff*
              85 Broad St., 28th Floor
              New York, New York 10004
              (212) 253-6911